## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

**BILLY JOE WOLFE,**
     **Plaintiff,**

                             **REPORT AND RECOMMENDATION**

**v.**                          **Civil Action No. 2:13cv00038**

**VIRGINIA DEPARTMENT**
**OF TRANSPORTATION ("VDOT")/**
**COMMONWEALTH OF VIRGINIA,**
     **Defendant.**

       In this employment discrimination and retaliation action, the court is asked to rule on a motion for attorneys' fees and costs, (Docket Item No. 40) ("Motion"). The Motion has been referred to the undersigned Magistrate Judge pursuant to Federal Rule of Civil Procedure Rules 54(d)(2)(D) and 72(b) and 28 U.S.C. § 636(b)(1)(B).   Based on the reasoning set out below, I recommend that the court grant the Motion, but reduce the amount of fees and costs awarded to a total of $82,212.57.

       Billy Joe Wolfe filed this action in July 2013 claiming that his employer, the Virginia Department of Transportation, ("VDOT"), discriminated and retaliated against him on the basis of his race in violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000e, et seq.  At a settlement conference held before the undersigned on October 10, 2014, the parties settled Wolfe's claims against VDOT with the exception of his claim for attorneys' fees and costs, which the parties agreed would be decided by the court.  By the Motion, counsel for Wolfe seeks an award against the defendant of attorneys' fees of $130,560.00 and

costs of $36,697.14, for a total of $167,257.14. (Docket Item No. 40.) VDOT has responded to the Motion, not objecting to the plaintiff's request for an award of fees and costs, but objecting to the amount requested. (Docket Item No. 41.) The Motion was heard by the undersigned Magistrate Judge by telephone conference call on February 3, 2015.

Section 706(k) of Title VII provides that "[i]n any action or proceeding under this subchapter[,] the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee … as part of the costs…." Civil Rights Act of 1964, § 706(k); 42 U.S.C. § 2000e-5(k). VDOT agrees that Wolfe should be considered a "prevailing party" eligible to receive an award of a reasonable attorney's fee. Furthermore, a prevailing plaintiff in a Title VII action ordinarily should be awarded attorneys' fees. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

In *Hensley*, the Supreme Court held that "[t]he most useful starting point for determining the amount of a reasonable attorney fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. The Fourth Circuit Court of Appeals has long recognized the use of the 12 factors set forth in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974), to determine the reasonableness of a fee award under 42 U.S.C. § 1988, the attorney's fee statute for the Civil Rights Act. *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the 12 *Johnson* factors). These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity cost in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at

-2-

the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and the client; and (12) attorney's fees in similar cases. *See Johnson*, 488 F.2d at 717-19.

In this case, I will first address whether the attorney and paralegal hourly rates sought are reasonable. Wolfe's attorneys seek to be compensated at an hourly rate of $300. VDOT argues that Wolfe's counsel should be compensated at an hourly rate of no more than $235.00. The party seeking a fee award bears the burden of proving that the hourly rate sought is reasonable. *See McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013). In determining the reasonableness of the requested hourly rate, the court must consider the prevailing market rate in the relevant community, taking into account the experience of the individual lawyers whose rate is being reviewed. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174-75 (4th Cir. 1994); *Johnson*, 488 F.2d at 719. The prevailing market rate may be established through affidavits reciting fees of counsel with similar qualifications, information concerning fee awards in similar cases and evidence of counsel's billing practices. *See Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987).

In this case, both of Wolfe's attorneys have submitted affidavits which outline their educational background and professional experience. (Docket Item Nos. 40-1, 40-2.)  According to his affidavit, Thomas Strelka was admitted to practice law in Virginia in 2007.  Mr. Strelka worked one year as a law clerk for the late Judge James C. Turk of this court and one year as a law clerk for Justice

Lawrence L. Koontz of the Supreme Court of Virginia. Mr. Strelka began his practice focusing on plaintiffs' employment cases in 2009.

According to her affidavit, Leigh Strelka was admitted to practice law in Virginia in 2006. She, too, worked as a law clerk for Judge Turk for one year. Mrs. Stelka began her practice in labor and employment law in 2007 with the Roanoke firm of Gentry, Locke, Rakes & Moore, primarily representing corporate defendants. In 2011, Mrs. Strelka left the law firm and began working independently with Mr. Strelka on plaintiffs' employment cases.

Both affidavits state that plaintiff's counsel are familiar with the market in Virginia for legal services in litigation arising under federal employment statutes, such as Title VII. Both attest that the hourly rate they request for their services in this case, $300 per hour, "falls within the range of prevailing market rates charged and collected by Virginia attorneys of similar educational background and experience for work in litigation arising under federal employment statutes or in similarly complex matters." Plaintiff's counsel also have provided affidavits from attorneys Jonathan Rogers, Edward G. Stout, Paul Beers and Arthur P. Strickland. Each of these attorneys, through his affidavit, states that an hourly rate of $300 is reasonable and/or consistent with the rates charged by employment lawyers in the Western District of Virginia with the qualifications and expertise of the Strelkas.

In response, VDOT has provided the court with five affidavits filed by attorneys in other cases in this court. At least one of these affidavits includes a request for fees for legal services performed as far back as 2004. These affidavits show that attorneys with similar years of experience as the Strelkas have sought to be compensated for their legal services performed in this court at hourly rates

ranging from $150 to $285. These affidavits also show that attorneys with significantly more experience than the Strelkas have sought to be compensated at hourly rates ranging from $200 to $425. In each of these cases, with the exception of one, the court used the hourly rate requested to calculate the fee to be awarded. In the one exception, the court reduced the senior attorney's hourly rate from the requested $425 an hour to $375.

Based on the above, I find that plaintiff's counsel have met their burden to show that their requested $300 hourly rate is within the range of the prevailing market rate in the Western District of Virginia for lawyers of similar experience and expertise handling similar cases. Insofar as defense counsel argues that the hourly rate for attorneys who appear in the Abingdon division of the court should be less than those appearing in the Roanoke division, I specifically reject that argument.

Plaintiff's fee request also includes the costs of employing three law students at the rate of $80 an hour to perform work reviewing the electronic records produced by the defendant in response to the plaintiff's discovery requests. The court notes that "it is not proper to award a full attorney rate for activities that should more effectively be performed by nonlawyers." *Chapman v. Astrue*, 2009 WL 3764009, at *1 (W.D. Va. Nov. 9, 2009) (citing *Spell*, 824 F.2d at 1401-02). Additionally, "purely clerical tasks are ordinarily part of a law office's overhead and should not be compensated for at all." *Chapman*, 2009 WL 3764009, at *1 (citing *Keith v. Volpe*, 644 F. Supp. 1312, 1316 (C.D. Cal. 1986)). In *Chapman*, this court found that it is proper to award a reduced hourly rate for nonattorney time spent "on the theory that their work contributed to their supervising attorney's work product, was traditionally done and billed by

-5-

attorneys, and could be done effectively by nonattorneys under supervision for a lower rate, thereby lowering overall litigation costs." 2009 WL 3764009, at *1 (quoting *Cook v. Brown*, 68 F.3d 447, 453 (Fed. Cir. 1995)). While the defendant has raised no objection to the $80 hourly rate for nonattorney work performed in this case, this court routinely recognizes $75 as a reasonable hourly rate for nonattorney time. *See Chapman*, 2009 WL 3764009, at *2 (citing *Alexander S. v. Boyd*, 113 F.3d 1373, 1377 n.1 (4th Cir. 1997) (paralegal services compensated at $65 per hour where lead counsel compensated at $225 per hour and associate counsel at $100 per hour). Therefore, any nonattorney time awarded in this case will be awarded at the rate of $75 an hour.

The court now turns its attention to addressing the reasonableness of the number of hours incurred by the attorneys and nonattorneys working on this case. In this case, plaintiff seeks an award of fees for 435.2 hours of attorney time and 383.8 hours of nonattorney time. Based on counsel's concession at the February 3 hearing that the nonattorney time in this case also was included in its entirety in the fee request in the related case, *Atkins v. VDOT*, 1:13cv00057, the court will reduce the nonattorney hours by one-half to 191.90 hours. Wolfe's counsel also conceded that the attorney time spent preparing, conducting and reviewing all depositions in August 2014 was billed in its entirety to both cases. Therefore, the attorney time requested will be reduced by 38.65 hours or one-half of the total time billed for these activities in this case,[1] leaving 396.55 hours of attorney time.

---

[1] This amount varies from the amount allowed for these activities in the related *Atkins* case. Despite counsel's concession that all time spent in preparation for, conducting and reviewing witness deposition testimony was billed in its entirety in both cases, the submitted time sheets do not confirm this. The amount billed for these activities was not identical in each case. Nonetheless, based on counsel's concession, the court has reduced the amount of time to be compensated for these activities by half of the time requested in each case.

-6-

The 191.90 remaining hours of nonattorney time billed in this case would amount to an employee working full-time for almost five weeks. The Motion, however, offers no explanation of how this time was spent other than "search, review, organization, analysis and memo creation necessary for the 700,000 + pages of [electronic] documents produced." The Motion also seeks fees for 85.2 hours of attorney time for "Review of VDOT ESI." The attorney time entries make no mention of reviewing any analysis or memoranda created from the nonattorneys' review of the documents. The Motion also offers no information with regard to what, if any, relevant information was gleaned from the review of the electronic documents. In plaintiff's reply brief, counsel states only that "hundreds of thousands of irrelevant documents" were produced by defendant. In the reply, counsel does state that the nonattorneys compiled spreadsheets referencing relevant electronic information for use during depositions.

Plaintiff's counsel argue that much of the time spent on the review of the electronic information produced by the defendant was necessitated by the way the defendant produced the information. For instance, plaintiff's counsel assert that the defendant simply provided a hard drive containing all of the electronic information responsive to the plaintiff's discovery requests in this and the related *Atkins* case. Plaintiff's counsel stated that the defendant made no effort to separate the production by case; nor did the defendant describe the information produced in any other way. Defense counsel argues that the time spent by the plaintiff's attorneys and nonattorneys to review the electronic information produced could have been reduced greatly if plaintiff's counsel had simply paid for the right to use the search platform used by the defendant at a cost of approximately $12,000.00. Defense counsel, however, does not elaborate on this argument.

Even with the reductions mentioned above, the plaintiff is seeking payment of $14,392.50 in nonattorney time[2] and $25,560.00 for attorney time,[3] for a total of $39,952.50, for review of the defendant's electronic discovery responses, or more than half of the amount which plaintiff accepted to settle his claims.  That being so, the court views the adjusted amount sought for review of electronic discovery as excessive without further information justifying the cost.

A further examination of the itemized record submitted by counsel in this case also shows that some of the attorney time should be reduced or eliminated. For instance, there is an entry for attorney time on the last day of each month for varying amounts for "Case analysis; deadline and statute of limitations review; assignment planning and organizational review of case" or "assessment and analysis of case status."  To the court, it appears that these entries were incurred as a reminder to counsel as to the status of the case.  As such, the court will eliminate each of these entries in addition to another entry for .7 hour for reviewing and organizing the case file for a total reduction of 23 hours of attorney time or a $6,900.00 reduction in the attorneys' fees.  The attorney entries for legal research of various topics total 42.1 hours, a figure the court does not find excessive considering the legal complexities of Title VII cases in general, and this one in particular.  Nonetheless, the court will eliminate 1.6 hours of legal research time and 2.5 hours of attorney-client conference time, or $1,230.00 in fees, spent researching and discussing venue and the appropriate division in which to file the case. The court finds that counsel experienced in these type cases should not have incurred such time. The court also will eliminate 21.5 hours of attorney time, or

---

[2] A total of 191.90 hours at an hourly rate of $75.
[3] A total of 85.2 hours at an hourly rate of $300.

$6,450.00 in fees, for time spent drafting declarations and a memorandum in opposition to an anticipated summary judgment motion which was never filed.

Based on the revisions stated above, the court must determine if 191.9 hours of nonattorney time at $75 an hour and 347.95 hours of attorney time at $300 an hour resulting in a total fee of $104,385.00 is reasonable in this case in light of the factors to be considered under *Johnson*, 488 F.2d at 717-19. With the exception of the time spent on review of the electronic information produced and the reductions imposed above, the attorneys have incurred more than 262 hours of work over more than two years to bring the plaintiff's claims to resolution. Few attorneys in this district handle Title VII cases because of the expertise and skill required and the inherent cost and difficulty of such cases. In choosing to pursue the plaintiff's claims, his counsel necessarily passed on the opportunity to perform other work for other clients. Although the claim for fees and costs exceeds the amount paid to settle plaintiff's claims, that is not uncommon in Title VII cases.

Having considered all of the above, the court finds that a total attorneys' fee of $79,041.00 is reasonable in this case. In reaching this amount, the court has reduced the amount of fees for attorney and nonattorney time for review of the electronic information produced by half to $19,976.25, which to the court is a more reasonable amount to incur for electronic discovery in a case of this size. The court has taken the remaining amount of fees, $98,801.25 and discounted those by 20 percent based on the fact that this case was resolved by a compromise

settlement to reach the reasonable fee of $79,041.00. The court also will award $3,171.57 in costs,[4] for a total award of $82,212.57.

Insofar as VDOT argues that any attorneys' fee awarded should be reduced as a sanction for plaintiff's counsel's statements to the news media, that argument is rejected. While the court has the authority to sanction a party or counsel who publishes false statements of fact concerning litigation before the court, *see Am. Sci. & Eng'g v. Autoclear*, LLC, 606 F. Supp. 2d 617, 624-27 (E.D. Va. 2008), there is no evidence before the court to show that plaintiff's counsel has engaged in any such conduct. The evidence before the court shows only that plaintiff's counsel spoke to a newspaper reporter on two occasions – once after the parties settled this case and, again, after the parties settled the related *Atkins* case. In a story that appeared after this case was settled, plaintiff's counsel is quoted as saying:

> "These cases have shown a disturbing culture from top down in a big section of a large state agency." Evidence developed so far presents an unflattering portrayal of some personnel "very high in the VDOT food chain," he said.

(Docket Item No. 41-13 at 1.) After settling the *Atkins* case, plaintiff's counsel confirmed that the parties had entered into a confidential settlement agreement, which he declined to further discuss. (Docket Item No. 42-7 at 2.)

---

[4] This amount represents the total of the $350.00 filing fee and one-half of the deposition costs of $5,643.14, which appear to have been charged in their entirety to both this case and the *Atkins* case.

While at least one of these statements contains facts that, as defense counsel conceded, were "contested" by the parties, the court can find nothing improper in plaintiff's counsel's statement. To the contrary, to the court's knowledge such conduct is not only permissible, but protected under the First Amendment to the U.S. Constitution.

## RECOMMENDED DISPOSITION

For the foregoing reasons, I recommend that the court grant the Motion and enter judgment awarding the plaintiff's attorneys fees of $79,041.00 and $3,171.57 in costs, for a total award against defendant of $82,212.57.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2014):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendation as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion

of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

DATED: February 11, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE